The Honorable Paul Bookout State Senator
1900 West Washington Jonesboro, AR 72401-2577
Dear Senator Bookout:
I am writing in response to your request for my response to a question relating to the following reported facts:
 The City of Jonesboro (City) previously imposed a 1% city wide sales tax. One half (1/2) of said tax is devoted to "capital improvements of a public nature," as defined in ACA Sec. 26-75-203. Further, ACA Sec. 26-75-206 provides lease rentals may be paid as a "capital improvement.["] On September 16, 2009, the City of Jonesboro entered into an Interlocal Agreement with Craighead County (County) for payment of jail expenses. The County allocates 26.41 of the jail bill as representing costs for the facility itself, with the balance of 73.59% representing salary and personnel. An Addendum was executed between the City and County reflecting this allocation[.]
Against this backdrop, you have posed the following question:
 Does the Interlocal Agreement, together with the Addendum thereto, constitute a "lease rental" agreement sufficient to pay that portion attributed to use of the facility itself from the capital improvement fund? *Page 2 
I gather by your use of the term "previously" that the voters approved the sales tax for capital improvements prior to the city's entering into the interlocal agreement. At issue, then, is whether the voters, in approving the capital-improvements tax, authorized use of tax proceeds to defray the 26.41% of a subsequently incurred "jail bill" that city and county agree constitutes "costs for the facility itself." As discussed below, the answer to this question may indeed turn on whether the interlocal agreement constitutes a "lease rental" of county jail facilities by the city.
RESPONSE
Although only a finder a fact could definitively answer your question, accepting as valid the assumptions that inhere in your question, I believe the answer to your question is, in all likelihood, "yes."
As an initial matter, I must note that the answer to your question turns on determining the voters' intent in approving the referenced tax. The substance of what the voters approved is reflected in the ballot title, [1] which I have not been provided. Assuming, however, that the voters approved a tax levy devoted simply to making "capital improvements of a public nature," and further assuming that 26.41% of the "jail bill" accurately reflects what you characterize as "costs for the facility itself" — a characterization that, if accurate, would describe what I consider a qualified capital expenditure — I believe the city might indeed defray those costs using revenues realized from the tax. However, only a finder of fact acquainted with all the surrounding circumstances could test these factual assumptions.
Chapter 75, subchapter 2 of title 26 of the Arkansas Code (Repl. 2008 Supp. 2009), captioned "Sales and Use Tax for Capital Improvements," provides, inter alia, for the levying of a sales tax to finance various municipal capital improvements. Included within the category of "capital improvements of a public nature" are "municipal buildings," "police facilities" and "prisons"[2] — resources I interpret as clearly including a jail serving a city and a county pursuant to an interlocal agreement.[3] *Page 3 
Section 26-75-206 of the Code (Repl. 2002), which you reference in your request, provides as follows regarding the nature of a "lease rental"[4] devoted to making capital improvements:
 Any city levying the tax as permitted in this subchapter is authorized to pledge all or any part of the revenues from the tax levied pursuant to this subchapter to the payment of lease rentals . . . for the purpose of providing all or part of the funds for the construction, reconstruction, extension, equipment, acquisition, or improvement of any capital improvements of a public nature. . . .[5]
Various aspects of this statute bear analysis. First, although I have found no authority directly addressing the issue, the general designation "lease rental" would appear to apply to an arrangement whereby a city pays for the use of a county-owned jail facility. A lease, after all, is generally recognized as being "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu[ally] rent."[6]
As represented in your factual representation, this definition would appear to apply to the relationship between the city and the county, since the city is reportedly using what I assume is a county facility in exchange for consideration.
As used in the statute, however, the term "lease rental" applies only if the rental payment is "pledged" for the "construction, reconstruction, extension, equipment, acquisition, or improvement" of a capital facility. I have found no authority directly addressing whether an interlocal agreement obligating a city to pay the county reasonable "costs for the facility itself" should be characterized as a "lease rental" under this standard. In the present case, it appears that two "pledge" requirements would apply in determining whether the city might make the payments at issue using tax revenues. First, the voters must have pledged the tax revenues to the making of capital improvements — a condition your factual *Page 4 
summary suggests has indeed been met. Secondly, the city must have pledged some or all those tax revenues to the payment of capital lease rentals. With respect to the latter of these conditions, it is unclear in your factual recitation whether the referenced interlocal agreement actually obligates the city to devote sales tax revenues to payment of the 24.61% of the rental obligation that the parties have agreed is reasonably allocable as "costs of the facility itself." A finder of fact might well conclude that a pledge of this nature is required under the above quoted statute.
To the extent, then, that tax revenues approved by the voters for capital improvements are pledged as consideration to be paid to the county under the interlocal agreement, it would appear appropriate to characterize the payments as made pursuant to a "lease rental" as defined in the statute. Nevertheless, only a finder of fact could ultimately establish this to be the case.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] See, e.g., Ark. Ops. Att'y Gen. Nos. 2009-168 and 2009-092 (stressing that tax expenditures for criminal justice projects must strictly comply with the terms specified on the ballot approving the tax).
[2] A.C.A. §§ 26-75-203(2)(K), (M) (P) (Repl. 2008).
[3] The Interlocal Cooperation Act is codified as A.C.A. §§ 25-20-101 through-108 (Repl. 2002 Supp. 2009).
[4] Subsection 26-75-203(9) of the Code (Repl. 2008) somewhat circularly defines the term "lease" as meaning "a lease of a capital improvement of a public nature" in which the city is the lessee.
[5] Subsection 26-24-204(a) (Repl. 2008) authorizes a materially indistinguishable use of tax revenues by counties.
[6] Black's Law Dictionary (9th ed. 2009). *Page 1